## LANCASHIRE SHIPPING CO., Limited, v. DURNING, Collector of Customs.

District Court, S. D. New York.

Nov. 29, 1937.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for defendant.

GODDARD, District Judge.

The plaintiff and the defendant each have moved for summary judgment under rule 113 of the Rules of the Civil Practice Act of the state of New York.

Plaintiff's suit was brought to recover the sum of $5,000 which it deposited with the defendant on January 3, 1936, in order to obtain clearance for its vessel, the Raby Castle. This $5,000 had been demanded by the defendant as a deposit to cover a possible fine of that amount because of an alleged violation of section 20(a–c) of the Immigration Act of 1924, 8 U.S.C. § 167, 8 U.S.C.A. § 167, for failing to detain on board the Raby Castle at the port of New York five alien seamen after the master had been ordered to do so by the immigration officials upon the vessel's arrival in January, 1931.

A notice of hearing for the purpose of determining whether such fine' should be imposed was served on the master on November 27, 1935. The Secretary of Labor imposed the fine in question on the master on October 13, 1936, who submitted a protest against the imposition of the fine.

In the amended answer it is alleged that the failure to carry out the order to detain occurred at some time between January 5 and March 12, 1931.

Previous to the imposition of the fine now in question, the Secretary of Labor on August 15, 1931, imposed a fine of $5,000, and that sum was deposited with the Secretary of Labor for the account of the Lancashire Shipping Company, Limited. However, that fine was held to be void, and that money was returned to the depositor, see Lancashire Shipping Co. v. Elting, C.C.A., 70 F.2d 699, for the reason that, although the owner and its agent had been served with notice of liability, neither had been served with notice of detention, and that the master, although served with notice of detention, had not been served with notice of liability.

On October 27, 1936, the former master of the Raby Castle was in the port of New York and was served with notice of liability to a fine for the failure to detain the said aliens on board the Raby Castle in 1931 in accordance with the order to detain served upon him at that time. On January 3, 1936, the Raby Castle was refused clearance unless she deposited security of $5,000 to secure payment of the proposed fine. The sum of $5,000 was deposited by the plaintiff through its agent under protest, and it is this $5,000 which plaintiff now seeks to recover.

Section 20(a) 'of the Immigration Act of 1924, 8 U.S.C.A. § 167(a) provides: "The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs."

For the purpose of preventing our immigration laws from being evaded by the illegal entrance into the United States of aliens who arrive at one of our ports as seamen on a vessel, the Congress provided in section 20(a), of the Immigration Act of 1924, that the "owner, charterer, agent, consignee, or master" of such vessel shall be under a duty after notice to detain on board and deport an alien seaman who has failed to establish to the satisfaction of the immigration officials that he is a bona fide seaman, and that he intends to depart on the vessel when she leaves port. Failure to comply with the notice subjects the one or ones notified to the possible imposition of a fine. Section 20(c) provides further that the vessel shall not be granted clearance papers until the fine is paid or a bond or security posted to cover its payment in the event it is later determined that there

has been a violation. The principal liability imposed by section 20(a–c) is on the ones who own, operate, or are in control of the vessel. Under section 32 of the Immigration Act of 1917, 39 Stat. 895, which was the predecessor of section 20 of the act of 1924, there was the same principal liability, but section 32 also created a secondary liability on the vessel to be enforced by proceedings in court against the vessel. Under the 1920 act the Congress made the master (or owner or consignee, as the case might be) liable for a penalty for negligently failing to detain an alien seaman after being ordered to do so, and further provided, "for which sum the said vessel shall be liable, and may be seized and proceeded against by way of libel." In the 1924 act, section 20, the Congress substituted an administrative penalty for the existing one; it changed the secondary liability to one which might be enforced by administrative proceedings, that is, through refusal of clearance. "Its provisions [section 20] are much more stringent than those of the earlier act." United States v. J. H. Winchester & Co., C.C.A., 40 F.2d 472, 473; Lloyd Royal Belge Societe Anonyme v. Elting, 61 F.2d 745, C.C.A.2.

An administrative method for enforcing payment of penalties by the withholding of clearance of the vessel is found in many of the penal sections of the immigration laws. Under section 32 of the 1917 Act, under section 20 of the 1924 Act, and under the many other penal sections of the Immigration Acts, the vessel becomes security for the payment of the fines that may be imposed.

Relying upon the security posted by the owners of the Raby Castle to satisfy the payment of the proposed fine, the vessel was given her necessary papers and allowed to depart. May the vessel owner now demand that such security be returned to it on the ground that not the owner but the master was the one who was guilty of the violation? This, it seems to me, would be contrary to the intention of section 20(a). The Congress has made the fine imposed upon the master a charge on the vessel by expressly stating that no clearance shall be granted to the vessel until the fine be paid.

The plaintiff questions the right of the government to use the vessel owner's money to pay a fine imposed upon the master when no fine was imposed upon the vessel owner itself. Counsel for plaintiff contends that the holding of its vessel as security for the payment of the penalty violates the Fifth Amendment of the Constitution of the United States. But the imposition of a secondary liability upon a vessel for a violation of the revenue laws by her master has long been held to be valid. Section 3088, Revised Statutes, provided that when a master of a vessel is subject to a penalty for violation of the revenue laws, the vessel herself shall be held as security for the payment of the penalty, and its provisions have been sustained. See The Saratoga, C.C., 15 F. 382; The Missouri, Fed.Cas. No. 9,652, affirmed U. S. v. The Missouri, Fed.Cas. No. 15,785; U. S. v. The Queen, Fed.Cas. No. 16,107, affirmed Fed.Cas. No. 16,108. Provisions in the Tariff Act of 1922, § 594, 42 Stat. 982, 19 U.S.C. § 498, and of the Tariff Act of 1930, § 594, 19 U.S.C. § 1594, providing that where the master of a vessel becomes subject to a penalty for violation of the customs-revenue laws such vessel may be held in payment of such penalty laws, have also been sustained. The Sebastopol, 56 F.2d 590, C.C.A.2; United States v. American Motor Boat K–1231, 54 F.2d 502, C.C.A.2.

There is, of course, no difference in principle between the power of the government to impose a secondary liability on a vessel for violation of the revenue laws by her master and its power to impose a secondary liability on the vessel for the master's violation of the immigration laws.

The Congress has ample authority, under the power to regulate foreign commerce, to impose such conditions on foreign vessels entering or departing from United States ports. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23. It also has the authority to regulate the entry of aliens into this country. Chinese Exclusion Case, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068. See, also, Oceanic Steam Navigation Co., Ltd. v. Stranahan, 214 U.S. 320, 321, 29 S.Ct. 671, 53 L.Ed. 1013. The Congress could have made the vessel herself primarily responsible for the payment of the penalty.

It is evident under the procedure adopted by the immigration officials that the government has no claim in personam against the owner, but the liability which the government seeks to enforce is not one in personam against the owner for penalties incurred by the master; it is the en-

forcement of its rights against the vessel on the vessel's secondary liability.

■ Counsel contends that Compagnie Generale Transatlantique v. Elting, 298 U. S. 217, 56 S.Ct. 770, 80 L.Ed. 1151, seems squarely in point, but I think it is not applicable; there, no valid fine had been imposed against any one. The notice to detain had been served on the master only, and the notice of liability and hearing had been given to the owner. It is an essential prerequisite to the imposition of the fine that both a notice to detain and a notice of liability and hearing be served upon the one fined. Lancashire Shipping Co. v. Elting, 70 F.2d 699, C.C.A.2; United States v. Columbus Marine Corporation, 62 F.2d 795, C.C.A.2; United States v. J. H. Winchester & Co., 40 F.2d 472, C.C.A.2.

■ In the case at bar, the notice of liability and hearing was served upon the master on November 27, 1935, and the fine imposed October 13, 1936, so that the necessary procedure for the imposition of the fine had been fulfilled, unless the imposition is invalid because imposed after the statute of limitations had expired. Counsel for plaintiff urges that the imposition of the fine was more than five years after the violation occurred, and is therefore barred by the provisions of section 1047 of the Revised Statutes. 28 U.S.C. § 791, 28 U.S.C. A. § 791. The government contends that section 1047 does not bar the imposition of the penalty nor the collection of it by administrative action, because such action is neither a suit nor a prosecution, and that if section 1047 had used the word or included "proceeding," then an administrative proceeding more than five years after the penalty accrued would be barred. However, if the section be construed so as to apply to an administrative proceeding, the imposition of the penalty in question is within the period because the proceeding was commenced by the service of notice of hearing on the master on November 27, 1935, which is within the five-year period. It therefore seems to me that the government is not foreclosed by section 1047, and the fine imposed against the master is valid, assuming that the findings of the Secretary of Labor on the facts are correct, and that seems to be conceded; at least they are not attacked.

Accordingly, the defendant's motion for judgment must be, and is, granted, and the plaintiff's motion is denied.