## NATIONAL SURETY CORPORATION OF NEW YORK, N. Y., v. UNITED STATES.

### No. 4457.

United States Circuit Court of Appeals, Fourth Circuit.

June 12, 1939.

Braden Vandeventer, of Norfolk, Va. (Vandeventer & Black, of Norfolk, Va., on the brief), for appellant.

Sterling Hutcheson, U. S. Atty., of Richmond, Va., and H. H. Holt, Jr., Asst. U. S. Atty., of Norfolk, Va., for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The United States recovered a judgment against National Surety Corporation for the sum of $2,000 on a bond wherein the master of the Panamanian S/S Mount Ossa, as principal, and the Surety Company, as surety, bound themselves in that sum to secure the payment of all fines that should be found by the Secretary of Labor to be due on account of the action of the master in bringing certain aliens into the port of Norfolk and Newport News. The Surety Company appealed on the ground that no fine had been validly imposed and hence there was no breach of the condition of the bond.

On October 7, 1933 the United States immigrant inspector at Newport News served on the master a notice in writing, addressed to the owner, agent, consignee, master or officer in charge of the ship, directing that two aliens from Greece be detained on board the vessel which was then lying in Hampton Roads. The men escaped the next day.

On October 17, 1933 the inspector of the immigration service in charge at Newport News served on Castner, Curran & Bullitt, Inc., agent of the ship, a notice that the evidence on file with respect to the escaped aliens indicated that a fine should be imposed under section 20(a) of the Immigration Act of May 26, 1924, 43 Stat. 164, 8 U.S.C.A. § 167(a); and that if it desired a hearing as to whether the fine should be imposed, it would be allowed sixty days from the date of the notice for that purpose and the vessel would be allowed to proceed on her outward voyage upon condition that the sum of $2,000 should be deposited as security for the payment of the fine.

On October 18, 1933, the master executed the bond for $2,000, giving his address therein in care of the agent; and the vessel was given her clearance papers. On December 18, 1933, the inspector in charge at Norfolk wrote to the agent of the ship referring to the fine notice of October 16

and requesting that a protest against the fine being made permanent be filed, or that the protest be abandoned promptly.

On December 19, 1933, the attorneys who appear for the appellant in this case wrote to the inspector on behalf of the master and owner of the ship protesting against the levy of the fine on the ground that due precaution had been taken to prevent the escape of the aliens, as shown by supporting affidavits of the master of the ship and a ship chandler in Norfolk.

On March 30, 1934, the Commissioner of Immigration notified the Comptroller General, and on April 2, 1934, notified the Collector of Customs at Norfolk that the fine of $2,000 upon the agent had been finally imposed. On that date demand for payment was made upon the agent.

On May 18, 1934, the same attorneys again wrote to the inspectors in charge at Norfolk that they represented the master of the ship who had executed the bond. The suit was subsequently brought after demand for the payment of the fine had been made upon the attorneys and denied.

The Surety Company points out that although the notice to detain the aliens was served on the master, and the bond was executed by him as principal, no subsequent notice of the fine was sent to him; and also that although no notice to detain the aliens was served upon the agent and no bond was given by it, the subsequent notice of liability was served and the fine was imposed upon it. It is therefore contended that no valid fine was imposed either upon the master or upon the agent, and that no liability under the bond ensued.

The appellant relies upon Compagnie Generale Transatlantique v. Elting, 298 U.S. 217, 56 S.Ct. 770, 80 L.Ed. 1151, where the court showed that under the terms of the statute, the fine is not laid on the owner generally, but on the owner, charterer, agent, consignee or master of a vessel who fails to detain on board any alien seamen employed on the vessel if required by the immigration officer to do so. It was held that since the duty to detain does not arise until the detention is required, the requirement must be communicated to the one on whom the duty is to rest. The notice to detain in that case was communicated to the master, but not in any way to the owner, while the fine was imposed upon the owner. The judgment upholding the fine was therefore reversed, the court being of the opinion that

492

under the statute, the master was not the agent of the owner, since nothing in the statute indicated a purpose to regard notice to one of the enumerated persons as binding upon any of the others.

The pending case, however, is substantially different from the case just cited. The master of the ship was not only notified to detain the aliens upon the ship, but after their escape, he had actual notice of the impending fine, for he gave the bond in suit. Furthermore, attorneys acting on his behalf subsequently filed a protest against the levy of the fine on the ground that he had taken due precautions to prevent the escape. Thus it appears that the master was not only given the notice of the requirement to detain prescribed by the statute, but also an opportunity, which he exercised, to present his objections to the imposition of the fine.

[2] Under these circumstances, the United States was entitled to recover on the bond. Compare Bank Line v. United States, 2 Cir., 96 F.2d 52. The duty to detain the alien seamen was imposed upon the master in accordance with the method prescribed by the statute; and he recognized his liability to fine for failure to perform the duty by filing the bond in suit. It is true that before the bond was filed, the preliminary notice of a possible fine was sent to the agent and not to the master; and afterwards the notices from the immigration service with respect to the imposition of the fine were sent to the agent in a manner indicating that the fine had been imposed upon it. The close connection, however, between the master and the agent is manifest. The master gave the bond in his own name, in care of the agent. On the day after the agent was notified that the fine would be made permanent unless a protest was promptly filed, the master and owner filed a protest with supporting affidavits through their attorneys. This protest was received by the immigration service, duly considered and rejected. It seems clear that on both sides the notices to the agent with respect to the fine were considered as notices to the master. It is certain that the master accepted them as such, and actually resisted the fine in the same manner as if the notices had been addressed to him. In short, on each occasion that notices with reference to the fine were served upon the agent, the response was made by the master; so that

he must be held to have waived the irregularity in the form of the address.

The requirements of the statute have been met, and the judgment of the District Court is affirmed.